570 So.2d 929 (1990)
Manuel A. COLINA, Appellant,
v.
STATE of Florida, Appellee.
No. 71124.
Supreme Court of Florida.
November 15, 1990.
*930 Kevin R. Monahan and Jeffrey W. Monroe, Palatka, for appellant.
Robert A. Butterworth, Atty. Gen., and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Manuel A. Colina appeals his convictions on two counts of first-degree murder and sentences of death on both counts. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Colina's convictions but find, for the reasons discussed below, that a new sentencing proceeding before a new jury is required.
This was the beating-murder of an elderly couple, Cecilia and Angel Diaz, in their residence. Colina and Felix Castro were charged with first-degree murder. Castro pleaded guilty, received two life sentences, and testified against Colina. At trial, Castro testified that, after he and Colina smoked some cocaine, they went to the Diazes' residence to collect money they owed him for work he had performed; that, upon arriving at the residence, Colina asked Mr. Diaz for a jack to change a tire; that Mr. Diaz came outside and spoke with Castro while Colina was inside the residence; that Castro battered Mr. Diaz in the back of the head and then Colina, who had come back outside, hit Mr. Diaz with a tire iron; that the two men then carried Mr. Diaz behind the residence, where Mrs. Diaz was lying; that, at Colina's direction, Castro cut up a clothesline so Colina could tie up the victims; and that Colina then struck each victim several times. Castro further testified that, before departing from the premises, he and Colina stole various items, including cash, jewelry, alcohol, and the Diazes' automobile; that they used the cash to purchase alcohol and Colina sold the jewelry to purchase cocaine, which the two men smoked; and that Castro drove back to the victims' residence and stole a television, which he used to acquire more cocaine. Castro also testified that he and Colina committed two more burglaries before departing for Houston, Texas, where they were eventually arrested.
Colina's testimony substantially differed from Castro's concerning the extent of Colina's participation. He testified that he fled the scene after seeing Castro hit Mr. Diaz numerous times; that he did not see Castro again until later that night when Castro pulled up beside him driving the Diazes' automobile; that Castro got out of the automobile holding a bottle of rum and a knife; that he placed the knife against Colina's throat and asked Colina to get into the automobile; and that they then returned to the victims' home, where Castro stole some goods prior to their departure for Texas.
*931 The prosecution also presented the testimony of a number of inmates at the Putnam County jail that Colina admitted to them, while he was in jail, that he killed the two victims.
The jury convicted Colina on two counts of first-degree murder and recommended that the trial judge impose the death sentence on both counts. The trial judge followed the jury's recommendation after finding no mitigating factors and the following four aggravating factors: the murders were committed while Colina was engaged in the commission of a robbery; the murders were committed for the purpose of avoiding or preventing a lawful arrest; the murders were especially heinous, atrocious, or cruel; and the murders were committed in a cold, calculated, and premeditated manner.
In this appeal, Colina raises the following seven issues: (1) whether Colina's convictions and sentences were fundamentally tainted by evidence and arguments calculated to arouse ethnic prejudice during both phases of the trial; (2) whether the trial court erred in permitting the state to present evidence of collateral offenses and uncharged misconduct; (3) whether the trial court erred in excluding all of Castro's statements offered by the defense; (4) whether the trial court erred in allowing the state to present evidence of nonstatutory aggravating circumstances during the penalty phase of the trial; (5) whether the trial court erred in finding that the murders were especially heinous, atrocious, or cruel; (6) whether the trial court erred in finding that the murders were committed in a cold, calculated, and premeditated manner; and (7) whether the trial court erred in finding that the murders were committed for the purpose of avoiding or preventing a lawful arrest.
We find that claims (1) and (2) are without merit and do not require discussion; that claims (3) and (4) have merit and require a new sentencing proceeding; and that claims (5), (6), and (7) need no discussion in light of our findings in claims (3) and (4).
Colina argues that the trial court erred in prohibiting him from testifying about Castro's statements made during the incident. At one point, Colina's counsel attempted to demonstrate through Colina's testimony that Castro knew the victims. In this regard, the following occurred:
[DEFENSE COUNSEL]: Mr. Colina, do you know whether or not Felix Castro knew Mr. and Mrs. Diaz?
[INTERPRETER]: Perfectly.
[DEFENSE COUNSEL]: Did he ever say anything about Mr. and Mrs. 
[PROSECUTOR]: Objection, hearsay, calls for hearsay.
THE COURT: Arguments?
[DEFENSE COUNSEL]: Your Honor, the person about whom this statement is attributable has been a witness in this cause, and this is an exception to the hearsay rule.
[PROSECUTOR]: No way. I object. There's not  this has not been placed in issue, wasn't asked of that witness, and, therefore, it's not even impeachment, it's hearsay.
THE COURT: I believe so. Sustained.
The following exchanges also transpired during Colina's direct examination:
[DEFENSE COUNSEL]: If you would, whenever the car pulled up, would you tell us what happened then.
[INTERPRETER]: He says when he saw the car park, he could see, like, perfectly how Felix Castro walk out of the car, and he had a bottle of rum in his hand, his left hand, and a knife in his right hand.
[DEFENSE COUNSEL]: Okay, what happened?
[INTERPRETER]: He put the bottle of rum on top of the car. And he grabbed him by the shirt and put the knife in his neck. He told him that he was the only witness.
[PROSECUTOR]: Objection, hearsay.
THE COURT: Mr. Butler.
[DEFENSE COUNSEL]: Your Honor, again, the witness has been here, he has testified, and we would suggest that there is an exception to the hearsay rule in regard to this testimony.

*932 [PROSECUTOR]: Not one in law, Your Honor. State objects.
THE COURT: No, sir, not one that I can remember from the Evidence Code. Sustained.
... .
[DEFENSE COUNSEL]: Would you tell us what happened when the car pulled up behind the house.
[INTERPRETER]: When the black boy parked the car behind the house, Felix Castro told him, the black boy 
[PROSECUTOR]: Objection. Anything he said, that's hearsay.
THE COURT: The objection is 
... .
[DEFENSE COUNSEL]: Manuel, you know, tell us what happened, not so much what was said; okay? Now, anything that you say is okay, but not what other people said; okay?
... .
[DEFENSE COUNSEL]: Okay. Would you tell us, without saying what was being said, would you tell us what you did then or what he did.
[INTERPRETER]: He saw the car was parked in front of the house of Raymond Spells. He went over to the window, the car window, and he told them to leave, that he didn't want any problems.
He woke up, and I'm not going to say the words that he said. But he start talking a lot of things. And he told me  and he told me to go with him 
[PROSECUTOR]: Objection as to anything that Felix Carlos Castro said.
THE COURT: All right. Wait just a minute.
We find that Colina's responses regarding Castro's prior statements were admissible. In the first colloquy, defense counsel was merely trying to show that Castro had made various statements about the Diazes from which the jury could infer that Castro knew the Diazes. In the second colloquy, counsel sought to have Colina testify that Castro held a knife to his throat while stating that he was the only witness. The statement which accompanied Castro's conduct was being used to show his threatening behavior and thereby decrease Colina's own culpability. Further, it is clear that counsel was not trying to prove the truth of Castro's statement when he asked Colina to testify what Castro said to the person who parked the car near Raymond Spells' house.
Section 90.801(1)(c), Florida Statutes (1985), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Because Castro's statements were not being introduced to prove the truth of the matters asserted, they were not hearsay. Although we find that the trial judge erred in prohibiting this testimony, we conclude, after a careful review of the record, that the errors were harmless as to Colina's conviction. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). On the other hand, we find that we cannot hold the errors to be harmless in the penalty phase. The trial judge's actions in sustaining the state's objections prevented Colina's counsel from demonstrating that Castro may have been the dominant figure, a major issue during the penalty phase.
In his fourth claim, Colina argues that the state improperly introduced nonstatutory aggravating evidence, specifically, that Colina felt no remorse for his actions. In this regard, the state introduced into evidence the black T-shirt that Colina wore at the time of his arrest, which the trial judge described as follows:
It contains the printing on the front of the representation is that of a semi-nude young lady on top of a partial skull. The young lady  and the words on the right-hand side of the T-shirt would be "sweet," and on the other side of the T-shirt would be "death," they're in a kind of a fluorescent white and surrounded by red streaks.
The state also asked an investigative witness about Colina's view of this incident, to which the witness responded: "Mr. Colina has never shown me any remorse over these things having happened." At another stage, the prosecutor asked:

*933 Q. Okay. Did it lend to your testimony regarding remorsefulness and the lack thereof on behalf of the Defendant?
A. Yes, sir, that there is no remorse.
We clearly and unequivocally said almost four years before the trial of this case that "lack of remorse should have no place in the consideration of aggravating factors." Pope v. State, 441 So.2d 1073, 1078 (Fla. 1983). Subsequently, in Trawick v. State, 473 So.2d 1235, 1240 (Fla. 1985), cert. denied, 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986), we stated: "[I]t is error to consider lack of remorse for any purpose in capital sentencing." (Citation omitted.) We recently reaffirmed this principle in Cochran v. State, 547 So.2d 928 (Fla. 1989). The state argues that Colina's counsel failed to object and that the errors, if any, were harmless. Defense counsel did object to the state's introduction of the T-shirt. In response to this objection, the prosecution clearly and expressly indicated its intent to present lack of remorse evidence to the jury. Applying the harmless error rule enunciated in DiGuilio, we do not find the errors to be harmless, particularly when combined with the errors in not allowing Colina to testify concerning Castro's statements at the time of the incident.
In conclusion, we affirm Colina's convictions for these senseless first-degree murders but find that the errors require a new sentencing proceeding before a new jury. We find that the other penalty phase issues raised by Colina need not be discussed in view of the fact that a new sentencing proceeding is required.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT and GRIMES, JJ., concur.
KOGAN, J., concurs in result only with convictions, and concurs with sentence.