634 So.2d 1077 (1994)
Manuel COLINA, Appellant,
v.
STATE of Florida, Appellee.
No. 79479.
Supreme Court of Florida.
April 7, 1994.
*1078 Kevin R. Monahan, Palatka, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Manuel Colina appeals his sentence of death imposed upon resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the trial court's reimposition of the death penalty.
Colina was found guilty of the bludgeoning murders of Cecilia and Angel Diaz and sentenced to death on both counts. In Colina v. State, 570 So.2d 929 (Fla. 1990), this Court affirmed the convictions but remanded the case for resentencing due to the trial court's consideration of Colina's lack of remorse as an aggravating factor. The facts of this case were thoroughly articulated in that opinion. Pertinent to this appeal, we stated:
At trial, [Felix] Castro testified that, after he and Colina smoked some cocaine, they went to the Diazes' residence to collect money they owed him for work he had performed; that, upon arriving at the residence, Colina asked Mr. Diaz for a jack to change a tire; that Mr. Diaz came outside and spoke with Castro while Colina was inside the residence; that Castro battered Mr. Diaz in the back of the head and then Colina, who had come back outside, hit Mr. Diaz with a tire iron; that the two men then carried Mr. Diaz behind the residence, where Mrs. Diaz was lying; that, at Colina's direction, Castro cut up a clothesline so Colina could tie up the victims; and that Colina then struck each victim several times. Castro further testified that, before departing from the premises, he and Colina stole various items, including cash, jewelry, alcohol, and the Diazes' automobile; that they used the cash to purchase alcohol and Colina sold the jewelry to purchase cocaine, which the two men smoked; and that Castro drove back to the victim's residence and stole a television, which he used to acquire more cocaine. Castro also testified that he and Colina committed two more burglaries before departing for Houston, Texas, where they were eventually arrested.
Id. at 930. As previously noted, this Court affirmed Colina's convictions for both murders but remanded for resentencing due to the trial court's consideration of Colina's lack of remorse for the killings as a nonstatutory aggravating factor. Id. at 932-33.
Prior to the resentencing hearing, the State filed a motion to declare Colina's codefendant, Felix Castro, unavailable to testify at the resentencing hearing because Castro had filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which was pending. Castro had pleaded guilty to the first-degree murder of the *1079 Diazes prior to the original trial and had been sentenced to life imprisonment without the possibility of parole for twenty-five years for each count, with the sentences to run consecutively. Castro was the principal witness against Colina at the original trial, during which Castro placed the responsibility for the murders on Colina.
At the first resentencing proceeding, the State sought to call Castro as its first witness. Relying on the advice of his postconviction counsel, Castro refused to testify on Fifth Amendment grounds because his rule 3.850 motion for postconviction relief was still pending. The State then moved to declare the witness unavailable and the defendant moved for a mistrial. The trial court granted the defense's motion and declared a mistrial.
Subsequently, but before the commencement of the second resentencing proceeding, the State filed a motion for reconsideration of the earlier ruling refusing to find Castro unavailable. The trial judge deferred ruling. At the second resentencing proceeding, Castro was again called and again refused to testify. The trial judge at this time ruled that Castro was unavailable and allowed Castro's testimony from the original trial to be read into the record. The trial judge also found Castro to be in contempt for failure to testify.
The State presented (1) medical testimony that both Cecilia Diaz and Angel Diaz received multiple blows to the head from a tire iron and that both victims died from the loss of blood resulting from the wounds inflicted to their heads; (2) Colina's prior accounts of the murders, which reflected that the majority of the acts were committed by Castro; and (3) testimony of a jail inmate who testified that, while in jail with Colina, he and Colina had a fight and that Colina stated that he had already killed two people and that one more would not make any difference. Colina presented testimony that established that Castro went back into the house after the murders had been committed and took a television set. The testimony also reflected that Castro knew the Diazes and referred to them as "Momma" and "Poppa." The jury, by a vote of seven to five, recommended that the judge impose the death penalty.
In sentencing Colina to death for the murder of Cecilia Diaz, the trial judge found two aggravating circumstances, specifically:
1. F.S. 921.141(5)(f) The capital felony was committed for pecuniary gain. The evidence is undisputed that this offense was carefully planned and the intent was to obtain money or items of value by the Defendant. After the murder of Cecilia Diaz, the Defendant and Co-Defendant ransacked the home looking for valuables and money.
2. F.S. 921.141(5)(h) The capital felony was especially heinous, atrocious or cruel. The Defendant carefully planned the murder of Cecilia Diaz and Angel Diaz. He chose as his weapon of destruction, a tire iron. Medical evidence showed that with repeated and violent blows to the facial area and head, life was beaten out of Cecilia Diaz. Evidence indicates an apprehension of death as she was beaten first in the home, then dragged over one hundred yards behind the house, to be beaten again. Medical testimony was that Cecilia Diaz could have survived the bashing of her face, but not of her skull. The Co-Defendant's testimony indicates she moaned and struggled, thereby causing the Defendant to continue his tortuous bashing, until her skull was in pieces, to assure her death.
In sentencing Colina to death for the murder of Angel Diaz, the trial judge found three aggravating factors:
1. F.S. 921.141(5)(b) The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person. The Defendant's prior conviction for the murder of Cecilia Diaz established beyond a reasonable doubt the existence of this aggravator.
2. F.S. 921.141(5)(d) The capital felony was committed while the defendant and his codefendant were engaged in the commission of or an attempt to commit robbery. The Defendant and Co-Defendant unlawfully took from the person of Angel Diaz his wallet and its contents after hitting *1080 him over the head with the tire iron as they were dragging him into the woods. Once into the woods, the Defendant continued to bash in Mr. Diaz's skull to assure his demise. Undisputed evidence at the resentencing hearing from the former trial testimony of the Co-Defendant was that one of the primary motives for killing both Cecilia and Angel Diaz was that both could identify the Defendant, MANUEL COLINA, as the lead participant in the criminal acts, but they did not know the Co-Defendant. The Co-Defendant testified that the reason the Defendant said "he had to" kill them was because "they know me" and therefore, the murder was a factor in the Defendant's flight after commission of the felony.
3) F.S. 921.141(5)(h) The capital felony was especially heinous, atrocious or cruel. The facts adduced at trial established conclusively that Angel Diaz was struck first by this Defendant's co-participant, Felix Castro, in the back of the head with a tree limb and was there upon knocked to the ground. Thereafter, the deceased, Angel Diaz, was come upon by Manuel Colina who had armed himself with a tire iron. When the deceased, Angel Diaz, attempted to rise from the ground from having been knocked down, he was struck at least twice more then and there by Manual Colina with the tire iron. The testimony of Dr. William Maples established that one of the bony defects in the back of Angel Diaz's skull was consistent with the unique tooling of the tire iron. There is record evidence that Manuel Colina inflicted great pain on Angel Diaz during the course of the first degree murder.
The fashion in which Angel Diaz was murdered is evidence upon which the record supports a finding of this capital felony having been committed in an especially heinous, atrocious or cruel manner.
The murder of Angel Diaz occurred relatively contemporaneous with the murder of Cecilia Diaz by the hand of the defendant, Manuel Colina. The evidence adduced at trial described one or the other of the victims moaning at points in time before the final blows were leveled upon their heads by the Defendant while in the presence of each other as they lay dying in the back section of their property. They were found lying in relative proximity to one another and were nude or semi-nude when recovered, and tied about the hands and feet. Medical evidence concluded that the victims had already literally bled to death before they were tied by the Defendant Colina.
(Citations omitted).
The trial judge rejected all statutory mitigating circumstances and expressly rejected Castro's consecutive life sentences as a nonstatutory mitigating circumstance of a disproportionate sentence of a codefendant, stating:
The only nonstatutory mitigating factor presented by the Defendant was the disparate treatment between himself and his Co-Defendant, FELIX CASTRO. FELIX CASTRO plead[ed] guilty to both these murders and was sentenced to two consecutive life sentences without possibility of parole for fifty (50) years. The Defendant argued that he should not receive any greater sentence. Had the evidence established the same degree of culpability, then this factor would be heavily weighed. However, all the evidence disputes any equal or greater culpability by the co-defendant. The Defendant, MANUEL COLINA, chose the victims, planned the murders and carried them out. The Co-Defendant, while assisting and participating, had a much lesser participation and involvement.
In this appeal, Colina raises the following five issues: (1) whether the trial judge violated Colina's right to confront witnesses against him under the Sixth Amendment and the Florida Constitution by allowing Castro's testimony from the first trial to be read to the jury; (2) whether the trial judge erred in finding that Castro was unavailable to testify; (3) whether the trial judge erred in finding that the murders were committed in an especially heinous, atrocious, or cruel manner; (4) whether the trial judge erred in allowing the State to introduce victim impact evidence; and 5) whether the trial judge erred in failing to find Castro's life sentence to be a nonstatutory *1081 mitigating factor. We find that none of the issues raised by Colina have merit.
In his first two claims, Colina asserts that his right to confront witnesses against him was violated when the trial judge allowed the State to read Castro's testimony from the first trial to the jury. Pertinent to this claim is section 90.804(1)(b), Florida Statutes (1989), which defines "unavailability as a witness" as meaning that the declarant "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so." Colina does not challenge the constitutionality of this section nor does he argue that the State failed to comply with the requirements of the statute for introducing the prior testimony of an unavailable witness. Colina, however, asserts that the testimony should not have been admitted, given the conflicting testimony and statements made by Castro, the State's primary witness against Colina. Colina argues that compliance with the statute failed to assure him a proper right to confrontation. Colina also argues that, allowing the arresting police officer to read the testimony, did not allow Colina the opportunity to "test the plausibility of the witness." We reject these contentions and find that the testimony was admissible. The testimony was taken in the course of a judicial proceeding in which Colina was a party, and the record clearly establishes that there was a substantial reason why the original witness was not available, as required by section 90.804, Florida Statutes (1989). See Thompson v. State, 619 So.2d 261 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985). We find that Colina had a full opportunity to confront this witness in the first trial and that the trial judge properly applied section 90.804 in declaring Castro unavailable.
In his third claim, Colina argues that the trial court erred in finding that both of the murders were committed in a heinous, atrocious, or cruel manner. In regard to the murder of Cecilia Diaz, Colina asserts that there is no evidence that Cecilia was alive or conscious after the initial attack in the kitchen, or when the other blows were delivered outside. Colina also asserts that there were no skeletal injuries to indicate defensive wounds and that Castro's testimony was inconsistent as to whether Cecilia Diaz was alive after being struck inside the home. Furthermore, Colina asserts that premeditation, as noted by the trial judge in the sentencing order, is not relevant for purposes of finding this aggravating factor. As to the murder of Angel Diaz, Colina argues that there is no record evidence that Angel suffered great pain and that all of the findings made by the court are irrelevant for purposes of finding that the murder was committed in a heinous, atrocious, or cruel manner.
We agree with the State that the record does support the finding that both murders were committed in a heinous, atrocious, or cruel manner. The medical examiner testified that the fatal blows to the heads of both Cecilia and Angel were inflicted while they were lying on the ground. The medical examiner testified that Cecilia could have survived the blows to her face but not the blows that fractured her skull. A forensic anthropologist testified that the weapon used to inflict the fatal blows to both of the victims' skulls was consistent with the tire iron wielded by Colina. Furthermore, Castro testified that, once he and Colina had dragged Angel to the clearing behind the house, Cecilia began to moan and that Colina dealt her several more blows, stating that he should have killed her while he was in the kitchen because, in Castro's words, "the old lady gave him a hard time." The forensic anthropologist also testified that there was some evidence of defensive wounds on Cecilia's shoulder. In regard to Angel Diaz, the record reflects that Angel was first hit by Castro and fell to the ground. Castro testified that when Angel attempted to get to his feet, Colina stepped in and hit Angel several times in the back of the head with the tire iron. Castro also stated that, as he turned to get something to tie up the victims, one of the victims started to get up and that Colina hit them with the tire iron several more times.
We find that these murders are the type of beating murders to which the heinous, atrocious, *1082 or cruel aggravating factor applies. See, e.g., Zeigler v. State, 580 So.2d 127 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991); Penn v. State, 574 So.2d 1079 (Fla. 1991); Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991). In Bruno, we found that this aggravating factor was applicable where
the Defendant savagely beat the victim in the head and shoulders with a crowbar in excess of ten times. The victim had self defense wounds on his hands and the Defendant continued the savage beating until the victim was no longer capable of resisting... . The Defendant's use of the crowbar was clearly especially atrocious and cruel.
574 So.2d at 82 (quoting the trial court's sentencing order). In this case, both victims were beaten to death with a tire iron and the record reflects that neither victim was killed instantly. We find that the heinous, atrocious, or cruel aggravating factor was clearly supported by the evidence.
In his fourth claim, Colina asserts that the trial court erred in allowing the State to introduce the testimony of the victims' children. We find this claim to be without merit. First, the children's testimony was presented only to the trial judge. Second, after allowing the victims' children to address the court, the trial judge expressly stated:
You need to also understand that I am bound by the laws of the State as to what I consider when the matter comes up for purposes of sentencing. And even though you have a right to be heard, and the next of kin should be heard, it is not one of those matters that I can consider and deal with in what I  when I impose a proper sentence.

(Emphasis added.) We find that, because the trial judge did not consider this testimony in deciding what sentence to impose, any error was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In his last claim, Colina asserts that the trial court erred in failing to find that the disparate treatment of Colina's equally culpable codefendant, Felix Castro, constituted a nonstatutory mitigating factor. We agree with the trial judge that the record establishes that Castro, "while assisting and participating, had a much lesser participation and involvement."
The evidence presented established that Castro hit Angel Diaz only once, knocking him to the ground, and that Colina was responsible for the barrage of lethal blows that eventually crushed both of the victims' skulls.
For the reasons expressed, we affirm the trial court's imposition of the death penalty on resentencing.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.