PER CURIAM.
This case is before the Court on appeal from a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
I. OVERVIEW
David Byron Russ pleaded guilty to the first-degree murder of Madeleine Leinen. Prior to the penalty phase, Russ waived his right to present mitigation and waived his right to a penalty phase jury. The trial court accepted his waiver and sentenced Russ to death. On direct appeal, Russ raises two issues: (1) whether the trial court followed this Court’s procedures and considered all properly presented mitigation, and (2) whether the trial court erred in finding the aggravators and miti-gators, that the evidence is sufficient, and that the death sentence is proportionate. For the reasons expressed below, Russ is not entitled to relief.
II. FACTS AND PROCEDURAL HISTORY
On February 6, 2008, Russ, pleaded guilty to the May 7, 2007, first-degree murder of Madeleine Leinen.[1] The facts of the underlying crime are laid out in the trial court’s sentencing order:
Shortly before midnight on the evening of May 6, 2007, Longwood Police Officer Brad Tollas noticed a white Jeep Cherokee parked in the parking lot of a business on Bennett Road. He approached the vehicle and observed the Defendant, David Russ, asleep in the driver’s seat. Russ had been on a ten day crack binge, and had cocaine and a crack pipe in the center console of the jeep.
Officer Tollas knocked on the darkly tinted window of the jeep and the Defendant responded saying he was “okay.” When Officer Tollas asked him to roll down the window, the Defendant started the jeep and drove away at a high rate of speed. Officer Tollas pursued the jeep and caught up with it in the Meadows West subdivision. He observed the vehicle, which was traveling at 5-10 mph, come to an abrupt stop. No one was found in the vehicle, and the defendant was not located after a search of the area was conducted. The jeep was abandoned about one block from the victim Madeleine Leinen’s home ... in Longwood.
After fleeing on foot, David Russ spent the night on the rooftop of a house adjacent to the victim’s. Early the next morning, he observed Madeleine Leinen leave for work. It was at that precise moment she was selected as his victim.
Madeleine Leinen returned to her home shortly after 6:00 p.m. after stop *184 ping as Sam’s Club in Casselberry. At Sam’s Club, the victim purchased both perishable and nonperishable items. A Sam’s Club receipt detailing the items purchased and noting a checkout time of May 7, 2007, at 5:35 p.m. was on the kitchen counter. Frozen shrimp which were purchased were placed in the freezer and other items purchased were found on a box in the garage and on the kitchen counter.
After killing the victim, the defendant took her Toyota Camry and drove straight to the Fairwinds Credit Union in Apopka. There he attempted unsuccessfully to withdraw money from her account at an automatic teller machine. His efforts were captured by a video surveillance camera. The defendant then left Florida heading towards Texas.
Early on the morning of May 8, 2007, the victim’s lifeless body was found face-down on the floor in her hall bathroom by a friend. The victim’s hands and feet were tightly bound with rope and a rope ligature was around her neck.
The medical examiner observed injuries to the victim consistent with strangulation from the neck ligature. He also noted three lacerations to the victim’s scalp which he attributed to blunt force trauma. Four stab wounds, three to the victim’s back and one to the head were also found. Additionally, the victim suffered facial bruising, fractured ribs, and a dislocated clavicle in the attack. The cause of death was attributed to multiple injuries resulting from blunt force trauma, stab wounds, and strangulation with a ligature.
Enroute to Texas, the Defendant pawned various items of the victim’s jewelry and continued his crack binge by purchasing drugs along the way. The victim’s car was recovered in Gainesville, Texas. Items of her jewelry which had been pawned by the Defendant on May 11, 2007, were recovered at a pawn shop in Denton, Texas. The Defendant was arrested by the sheriffs department in Denton, Texas on May 16, 2007.
Guilt Phase
The Plea Hearing
Russ was indicted on the following charges (count 1) first-degree premeditated murder, (count 2) kidnapping with a deadly weapon, (count 3) carjacking, (count 4) robbery with a deadly weapon, and (count 5) burglary with assault or battery. At his first appearance, Russ pleaded not guilty to the charges against him and was appointed a public defender. Subsequently, on February 6, 2009, the trial court conducted a plea hearing where Russ withdrew his pleas of not guilty and tendered a plea of guilty as charged to counts 1, 2, 4, and 5, and pleaded guilty to the lesser included offense of grand theft as to count 3. The plea did not contain any sentencing agreements between Russ and the State and Russ was aware that the State intended to seek imposition of the death penalty despite his plea. The trial court requested, and the State furnished, a factual basis for the plea. Trial counsel stipulated that the State could establish the proffered evidence by competent evidence and Russ agreed with the facts offered by the State. The trial court found that Russ was “alert and intelligent” and that the plea was “freely and voluntarily made with knowledge of the consequences after advice of competent counsel.”
Waiver
On April 9, 2008, at Russ’s request, trial counsel informed the trial court that Russ wanted to waive the presentation of all mitigation during the penalty phase and the penalty phase jury. On April 14, 2008, the trial court conducted a status conference and discussed Russ’s desire to waive *185 the presentation of mitigation. Russ again indicated that he wanted to waive the presentation of mitigation, stating that he “did not want to drag the victim’s family, [his] family, or anybody else through the mitigation,” even though the mitigation was probably credible. Trial counsel confirmed that Russ was aware of the consequences of waiving mitigation and that Russ was aware of the difference between presenting mitigation to the jury and presenting it only to the trial court. The trial court informed Russ that presenting as much information as possible was in each party’s best interest so that the court could determine an appropriate sentence for the crimes. The trial court urged Russ to reconsider waiving his right to present mitigation.
On April 30 and May 1, 2008, the trial court conducted a Koon[2] hearing. At the conclusion of the hearing, the trial court accepted Russ’s waiver and again informed Russ that the trial court was obligated to independently weigh the aggravating and mitigating factors. Accordingly, the trial court ordered a presentence investigation (PSI) report. Although Russ was still represented by trial counsel, the trial court appointed special counsel to present mitigation to the trial court.
On May 14, 2008, Russ wrote a letter to Judge Alva. Among other things, the contents of the letter expressed Russ’s guilt, described the crime, stated that the crime was premeditated, and again requested that the trial court accept his waiver of the presentation of mitigation during the penalty phase.
The trial court conducted a status conference on August 7, 2008. At that time, special counsel requested that the trial court enter an order or ask Russ to cooperate so that he could be evaluated by a neuropsychologist. Special counsel informed the trial court that on various occasions, special counsel, investigators, and doctors had gone to the jail, but noted that each time they went, Russ refused to speak with any of them. The trial court asked Russ if he would cooperate, but Russ refused to undergo an evaluation and also refused to submit to a PET scan.
On August 27, 2008, the State filed a “Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts.” The State sought to introduce evidence regarding Russ’s criminal actions prior to and after the murder of Leinen. Specifically, the State sought to introduce the following evidence: (1) evidence that Russ broke into a woman’s home in Texas after the murder of Leinen with the intent to commit a felony therein; (2) Russ was in possession of cocaine on May 6, 2007; (3) Russ was in possession of drug paraphernalia on May 6, 2007; and (4) Russ was loitering or prowling on May 7, 2007. Russ filed a motion in limine requesting the trial court to prohibit the State from offering evidence related to the crimes listed in the notice of intent. The trial court reserved ruling on the motion until the evidence was proffered during the penalty phase.
On November 23, 2008, Russ wrote another letter to Judge Alva indicating his desire to waive the presentation of mitigation and jury during the penalty phase.
In response to Russ’s motion in limine, the State proffered the testimony of three witnesses. After argument, the trial court excluded the evidence regarding Russ’s convictions for fleeing and eluding a police officer and for possession of cocaine and drug paraphernalia. The trial court reserved ruling on the motion in limine re *186 garding the evidence for the remaining issues.
Penalty Phase
Russ’s penalty phase trial was conducted on Januaiy 8 and 9, 2009. There, the State presented Russ’s May 14, 2008, letter to Judge Alva. The State also proffered evidence regarding the crime Russ committed in Texas shortly after the Leinen murder. However, the trial court later determined that that proffer was irrelevant and declined to consider it.
During the penalty phase, the State called seven witnesses. Special counsel participated in the penalty phase trial by (1) presenting prison medical records from previous incarcerations, (2) developing four witnesses’ testimony through cross-examination, and (8) arguing against imposition of the death penalty and noting a number of potentially mitigating factors.[3] Special counsel called three witnesses during the penalty phase. Special counsel also presented Russ’s records from the following facilities: (1) the Texas Department of Criminal Justice (1993-1996); (2) the University Medical Center, Lubbock, Texas (1996-1998); (3) the Texas Department of Criminal Justice (1998-2001); (4) the Correctional Managed Health Services, State of Texas (2001-2005); and (5) the John E. Polk Correctional Facility (May 2007-pres-ent). Additional documents were admitted into evidence, such as Russ’s (1) G.E.D., (2) college transcripts showing a G.P.A. of 3.67, (3) letter of acceptance to Texas Tech, (4) scholarship donor forms, and (5) thank-you letters to the scholarship donors.
Spencer[4] Hearing
On January 15, 2009, the trial court conducted a Spencer hearing.
During the Spencer hearing, special counsel presented the following mitigation evidence: (1) Russ suffered from a long-term severe addiction to illegal drugs; (2) the crimes of conviction were the result of a long history of drug abuse and a direct result of said addiction; (3) Russ was severely physically abused as a child by his father; (4) Russ was verbally abused as a child by his father; (5) Russ had the capacity to form and maintain loving relationships with family members, before and after incarceration; (6) Russ was a devoted brother; (7) Russ was a devoted son to his mother; (8) Russ suffered from multiple medical problems, including: (a) a thyroid condition, (b) hepatitis C, (c) head trauma, (d) severe headaches, (e) vertigo, (f) vision problems, (g) dental problems, (h) heart attack, (i) allergies, (j) kidney stones, (k) chronic acid reflux, (l) asthma, and (m) degenerative disc disease; (9) Russ made numerous attempts to cure his drug addiction by going to multiple drug rehabilitation programs; (10) Russ was spending $500-600 each week on cocaine prior to the crimes of conviction; (11) Russ suffered from undiagnosed mental illness due to his physical abuse and drug use; (12) Russ pleaded guilty to the crimes and accepted responsibility in this matter; (13) Russ behaved appropriately in the courtroom; (14) Russ obtained his high school GED; (15) Russ had the trade skill of being a roofer; (16) Russ suffered from *187 depression; (17) Russ had been taking prescription medicine while in custody which was very helpful for his mental health status; (18) Russ had been trained and educated in the field of drug abuse; (19) Russ attended Western Texas College from 1994 to 1997 and had a cumulative GPA of 3.67; (20) Russ was accepted to attend school at Texas Tech University in Lubbock, Texas, on July 17,1997; (21) Russ was a member of the “Center for the Study of Addiction” which was run by Dr. Carl Anderson, Ph.D., at Texas Tech University; (21) Russ received a substance abuse studies scholarship for him to address his substance abuse addiction with Dr. Anderson on December 10, 1996; (22) Russ wrote a thank-you note and kind words to scholarship sponsors concerning his receipt of the scholarship in 1997 and 1998; (23) Russ was a father figure to the young son of his live-in girlfriend; (24) Russ took his girlfriend’s son fishing and helped with his school work; (25) Russ carried an 80-year-old woman from her car to the ocean so she could sit in a chair and fish; (26) Russ had a loving relationship with his girlfriend; (27) Russ did not want to put the victim’s family members through the emotional process of the penalty phase proceedings; (28) Russ had been counseling children concerning criminal activity and the dangers of drug use while in custody at the county jail for roughly the previous twelve months — the counseling was part of a program run by the Sheriffs Office; (29) Russ had no violent criminal history.

Sentencing Order

On May 13, 2009, the trial court entered its sentencing order. In the order, the trial court noted that Russ entered a plea of guilty to all charges and that he waived the penalty phase jury. The trial court relied on Russ’s description of the events surrounding the murder in addition to other evidence.
The trial court found the existence of the following aggravating circumstances: the capital felony was (1) committed while the defendant was engaged in the commission of a kidnapping (significant weight), (2) committed for pecuniary gain (moderate weight), (3) especially heinous, atrocious, or cruel (HAC) (great weight), and (4) was committed in a cold, calculated, and premeditated manner (CCP) (great weight). The trial court rejected the aggravating factor that the murder was committed to avoid lawful arrest, finding that the State failed to prove that aggravating factor beyond a reasonable doubt.
The trial court found the existence of the following statutory mitigators: (1) Russ had an abusive childhood (moderate weight), and (2) Russ suffered from severe, long-term addiction to drugs which he was unable to conquer despite numerous attempts at rehabilitation (some weight).
Finally, the trial court found the existence of the following nonstatutory miti-gators: (1) the defendant was remorseful for the homicide (moderate weight), (2) the defendant suffered from multiple medical problems (very little weight), (3) the defendant had the capacity to form and maintain loving and caring relationships with both family and nonfamily members (little weight), (4) the defendant had pursued higher education and was skilled in the roofing trade (little weight), (5) the defendant had no violent criminal history (little weight), (6) the defendant behaved appropriately in the courtroom (little weight), and (7) the defendant wrote thank-you notes to his scholarship donors at Texas Tech University in 1997 (very little weight).
Russ was sentenced to (1) death for first-degree murder, (2) life imprisonment for kidnapping with a weapon, (3) five years’ imprisonment for grand theft of a *188 motor vehicle, (4) life imprisonment for the crime of robbery with a deadly weapon, and (5) life imprisonment for the crime of burglary of a dwelling with an assault or battery. The trial court ordered that the sentences be imposed to run concurrently and gave Russ 704 days credit for time served on each count. We now address each issue in turn.
III. ANALYSIS
Issue I: Waiver of Mitigation
Russ contends that (1) the trial court failed to require an additional investigation into the mitigation that it was on notice of, (2) the trial court failed to adequately fulfill its constitutional obligation to ensure that Russ receive individualized sentencing, and (3) the death penalty was unfairly and unconstitutionally imposed. We disagree.
We review a trial court’s decision to accept a defendant’s request to waive the presentation of mitigation during the penalty phase for an abuse of discretion. See Spann v. State, 857 So.2d 845, 854 (Fla.2003) (“The trial court did not abuse its discretion when it granted Spann’s request to waive presentation of mitigation.”).
Koon Requirements
It is well established that a competent defendant may waive the right to present mitigation during the penalty phase of a capital trial. See Spann, 857 So.2d at 853 (citing Durocher v. State, 604 So.2d 810, 812 (Fla.1992)). In Koon, this Court detailed a three-part procedure to be applied when a defendant requests to waive his or her right to present mitigation evidence during the penalty phase:
When a defendant, against his counsel’s advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant’s decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel’s recommendation, he wishes to waive presentation of penalty phase evidence.
Koon, 619 So.2d at 250. Compliance with Koon necessarily requires that the defendant be aware of available mitigation.
Here, the record reveals that the trial court complied with the three-part procedure outlined in Koon. Once trial counsel and Russ informed the trial court of Russ’s desire to waive the presentation of mitigation, the trial court conducted a Koon hearing. There, Russ maintained that he wanted to waive his right to present mitigating evidence during the penalty phase. Trial counsel indicated that a defense expert had previously found Russ competent, and trial counsel explained that Russ had not been evaluated since because there was no indication that Russ “had in any way lost his competency.”
To ensure that Russ was aware of the aggravators that the State intended to rely on as support for imposition of the death penalty, the State, at the trial court’s request, announced that it was seeking the following aggravators (1) CCP, (2) HAC, (3) pecuniary gain, (4) kidnapping, and (5) avoid arrest. At that time, Russ told the trial court that he did not want his lawyers to cross-examine or challenge the aggravation.
Russ indicated that he wanted trial counsel to continue representing him with the understanding that trial counsel would *189 not present any mitigation. To ensure that Russ was aware of the potential mitigation, trial counsel announced the potential mitigation that was available on Russ’s behalf. This mitigation included: (1) witness testimony regarding Russ’s extreme remorse, (2) testimony from jail officials regarding Russ’s good behavior while incarcerated, (3) testimony regarding the childhood beatings that Russ endured, (4) Russ’s family’s history of mental illness, (5) evidence of the psychological torture Russ endured at the hands of his father, (6) Russ’s life while in foster care, (7) a psychological evaluation report that was conducted when Russ was 16 years old, (8) family member testimony, (9) testimony from Russ’s childhood baseball coach that Russ’s father would beat him for playing poorly, (10) testimony of two of Russ’s former stepmothers, (11) testimony of a professor from the university in Texas where Russ enrolled in the Study of Addictions program, (12) evidence regarding Russ’s rehabilitation efforts, (13) witnesses from a prison ministry, (14) presentation of a televised broadcast in which Russ spoke of the dangers of drug use at the behest of a city councilman, (15) accounts that Russ was a good employee until he developed his drug problems, (16) testimony regarding his employment just prior to the crime, (17) Georgia prison records indicating that Russ sustained head injuries while incarcerated, (18) expert testimony regarding the psychological impact of Russ’s upbringing, (19) testimony from Russ’s former girlfriend and former fiancée, and (20) records of Russ’s injuries and ten-day hospitalization following a car accident in South Dakota.
Trial counsel also announced that he had a forensic pathologist who would present testimony rebutting the CCP and HAC aggravators. The trial court asked Russ whether he would allow trial counsel to cross-examine the State’s expert to minimize the aggravators. Russ said that he would not. The trial court also asked Russ if he would allow trial counsel to present any mitigating evidence and specifically referred to each of the mitigating factors trial counsel had announced. Again, Russ said that he would not. Again, the trial court explained to Russ the trial court’s duty to address mitigation and that the trial court might call its own witnesses if necessary.
On May 1, 2008, Russ was found competent to waive the penalty phase jury and the presentation of mitigation. Russ indicated that he still intended to waive the penalty phase jury and the presentation of mitigation. Thus, the trial court complied with the requirements set forth in Korn.
Muhammad[5] Requirements
As articulated in Muhammad, when a defendant waives the right to present mitigation evidence, the trial court must order the preparation of a PSI and, in its discretion, may call witnesses to present mitigation evidence to the extent that the PSI alerts the court to the existence of significant mitigation. See id. at 363-65.
In the instant case, the trial court ordered a comprehensive PSI to be completed by June 30, 2008. The trial court granted Russ’s request to waive the presentation of mitigation and the penalty phase jury and again informed Russ that the trial court was obligated to independently weigh the aggravating and mitigating factors. Although Russ was still represented by trial counsel, the trial court appointed special counsel to present mitigation to the trial court.
*190 Russ presents several different arguments to support his assertion that the trial court failed to consider all of the mitigation presented. First, Russ argues that the trial court should have considered the possible mitigation proffered by trial counsel at the Koon hearing. This argument is without merit.
The reason for trial counsel’s proffer of possible mitigating evidence during the Koon hearing was to inform Russ of the potential mitigation to ensure that his waiver was made knowingly, intelligently, and voluntarily. “Mitigating evidence must be considered and weighed when contained ‘anywhere in the record, to the extent it is believable and uncontroverted,’ ” LaMarca v. State, 785 So.2d 1209, 1215 (Fla.2001) (quoting Robinson v. State, 684 So.2d 175, 177 (Fla.1996)). However, we have repeatedly explained, “If a defendant elects not to submit proof of mitigating circumstances, the trial court is not required to accept potential mitigating circumstances as proven based on defense counsel’s proffer of evidence.” LaMarca, 785 So.2d at 1216 (citing Chandler v. State, 702 So.2d 186, 199-201 (Fla.1997)); see Grim v. State, 841 So.2d 455, 462 (Fla.2003). Further, we have stated that “[p]roffered evidence is merely a representation of what evidence the defendant proposes to present and is not actual evidence.” LaMarca, 785 So.2d at 1216 (citing State v. Warner, 721 So.2d 767, 769 (Fla. 4th DCA 1998) (explaining that “a proffer is not evidence”), approved on other grounds, 762 So.2d 507 (Fla.2000)). Therefore, the trial court did not err in failing to consider the proffered mitigation evidence that was presented during the Koon hearing.
Second, Russ contends that the PSI report revealed the existence of significant mental mitigation and that the trial court’s failure to consider all of the mitigation that was present in the PSI report violated the requirements articulated by this Court in Muhammad. See Muhammad, 782 So.2d at 363. Specifically, Russ contends that “the PSI suggests that Russ has been diagnosed with and treated for mental illness.”
A review of the record reveals the following: (1) Russ “is [being] or was previously treated” for various illnesses, including “psychiatric Hx”; (2) Russ suffered from “major depression” for one month while incarcerated at the John E. Polk Correctional Facility in October 2007; (3) Russ was first prescribed the Sinequan antidepressant on June 17, 2007, after he met with a psychiatrist; (4) on August 4 and August 17, 2007, Russ requested that his dosage of Sinequan be increased “if [he] was still struggling with depression and lack of sleep”; (5) Dr. Westhead met with Russ on August 21, 2007, and noted that Russ suffered from “major depression”; (6) Russ said he was “extremely depressed” because he “had a good life and now it’s gone due to the drugs”; (7) the only mention of Russ’s diagnosis of “psychiatric Hx” is from a questionnaire filled out in June 2007, which asked “do you now have or have you ever had” “psychiatric Hx” and the box for “psychiatric Hx” was checked; (8) the mental health intake form noted that Russ was oriented, had a normal mood temperament, was able to use relevant speech, did not display abnormalities in his thought pattern although he was having problems sleeping; (9) Russ denied any history of psychiatric illness or treatment; and (9) a psychological evaluation was taken in 1978, when Russ was 16 years old. Further, the PSI provides:
The mother stated he has no mental health illnesses diagnosed. She thinks he does, though. She stated that his father beat him half his life. The sub *191 ject’s mother stated that the father was a mean man. The Texas Department of Criminal Justice Health Summary dated 10/1/93 lists the subject was never treated for mental illness. The Denton County Medical Intake Information form of 5/16/07 lists chest congestion as being the only illness he was suffering from at that time.
The form also states medical was notified of the condition. There is no listing of any mental health problem and no medical attention was required on 5/16/07.
Additionally, the PSI report indicates that Russ was “treated for head trauma.”
Once the comprehensive PSI is complete, the trial court must determine whether it suggests the existence of mitigation. See Barnes v. State, 29 So.3d 1010, 1023 (Fla.) (“Muhammad does not set forth a hard and fast rule that a trial court has no discretion to order investigation and presentation of mitigation without first reviewing a PSI and without first making an express determination that the PSI suggests the existence of mitigation.”), cert. denied, — U.S. -, 131 S.Ct. 234, 178 L.Ed.2d 155 (2010). In its sentencing order, the trial court considered Russ’s multiple medical problems, including his depression, as a nonstatutory mitigating factor and assigned it very little weight after finding that there was no evidence that any of Russ’s medical problems affected Russ’s actions regarding the murder of Leinen.
As articulated in Muhammad, “if the PSI and the accompanying records alert the trial court to the probability of significant mitigation, the trial court has the discretion to call persons with mitigating evidence as its own witnesses.” 782 So.2d at 364; see Barnes, 29 So.3d at 1023 (explaining that the trial court, once alerted to the probability of significant mitigation, has discretion to call witnesses, appoint special counsel, or utilize standby counsel for the limited purpose of further investigation and presentation of mitigation). Here, the PSI report did not alert the court to the probability of significant mental mitigation. Rather, the evidence of “psychiatric Hx” was a self-diagnosis, Russ’s onset of depression occurred after the murder while he was incarcerated and facing a capital trial, there is no indication that Russ’s mother had much interaction with him while he was a child or as an adult, and special counsel requested a mental health evaluation and PET scan regarding Russ’s head .injuries, but Russ refused.
Accordingly, we conclude that the trial court did not abuse its discretion.
Issue II: Proportionality
Aggravating Circumstances
In the second issue, Russ first argues that the State failed to prove the CCP and HAC aggravators beyond a reasonable doubt. We disagree.
In reviewing the trial court’s finding of an aggravating circumstance, this Court’s “task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.” McWatters v. State, 36 So.3d 613, 642 (Fla.) (quoting Lynch v. State, 841 So.2d 362, 368 (Fla.2003)), cert. denied, — U.S. -, 131 S.Ct. 510, 178 L.Ed.2d 378 (2010).
CCP
Russ’s argument that the trial court erred in finding that the CCP aggra-vator applied to the murder is without merit. This Court has opined:
*192 To establish the CCP aggravator, the State must prove beyond a reasonable doubt that (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); (2) the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); (3) the defendant exhibited heightened premeditation (premeditated); and (4) the murder was committed with no pretext of legal or moral justification.
McWatters, 36 So.3d at 640-41 (citing § 921.141(5)(i) (Fla. Stat.; Pearce v. State, 880 So.2d 561, 575-76 (Fla.2004))). “The CCP aggravator pertains specifically to the defendant’s state of mind, intent, and motivation of the defendant.” Wright v. State, 19 So.3d 277, 298 (Fla.2009) (citing Brown v. State, 721 So.2d 274, 277 (Fla.1998)). A trial court’s determination of whether CCP is present in a case is based upon the totality of the circumstances. Hudson v. State, 992 So.2d 96 (Fla.2008).
In the instant case, the trial court applied the correct rule of law and made the following findings:
In his letter to the Court, [Russ] stated that after eluding pursuit by Officer Tollas, he spent the night on the rooftop of a house adjacent to Leinen’s home. He wrote, “At dawn, I awakened. I saw the victim leaving for work. I choose my victim at that exact moment.” Further in the letter, he states, “Was the murder premeditated? Yes, your Honor it was. Did I believe I was capable of such a crime while on a drug crime spree? No, I did not. I was no doubt a cold blooded killer on that day.”
[Russ] remained in the victim’s home the entire day, waiting for her to return. Crime scene Investigator Ohlson found rope similar to the rope used to bind [Leinen’s] feet in the trash can behind the washer and dryer in the garage. A different type of rope was used for the neck ligature and to bind [Leinen’s] hands using a complex series of knots.
[Leinen’s] home was neat and tidy without any signs of a struggle. Blood droplets were found in the garage, but the actual killing appeared to take place in the hall bathroom. Common sense and the evidence at the scene indicate [Russ] likely first encountered the victim in the garage, subdued her with an initial blow, and walked her through the house to the hall bathroom.
The evidence indicates the victim’s murder was not a spontaneous or impulsive act. Nor was it done in a frenzy or rage. While the evidence establishes [Russ] had been using crack cocaine heavily in the days preceding May 7, 2007, there was no evidence that [Russ] was under the influence of drugs at the time of the murder. Rather, ... Leinen’s murder was the product of [Russ’s] prearranged design. He had selected her as his victim early that morning. He waited hours for her to return home. Prior to the murder he procured two types of rope and a knife to execute his plan. The absence of any signs of a struggle and the lack of defensive wounds on the victim indicate she offered no resistance. Once in the bathroom, [Russ] meticulously tied Leinen’s hands and feet and used three different means to ensure her death. Undoubtedly, many of the victim’s wounds occurred as she lay bound and helpless on the floor. No evidence of moral or legal justification was presented or argued.
The Court finds the above stated evidence establishes this aggravating circumstance beyond a reasonable doubt, and it is given great weight.
As a preliminary matter, Russ contends the trial court’s finding of the *193 CCP aggravator is based solely on circumstantial evidence and thus is subject to the special standard for circumstantial evidence cases. This argument is misguided. Russ confessed to the crime. A defendant’s confession is generally considered to be direct, not circumstantial, evidence. See Walls v. State, 641 So.2d 381 (Fla.1994). Where evidence of guilt is direct, the following standard is applied: the evidence will be deemed sufficient to sustain the conviction where a rational trier of fact, upon reviewing the evidence in the light most favorable to the State, can find that the elements of the crime have been established beyond a reasonable doubt. Pagan v. State, 830 So.2d 792, 803 (Fla.2002); see also Pearce, 880 So.2d at 576 (noting that to establish CCP, the State must prove each element of CCP beyond a reasonable doubt). Here, Russ’s confession is consistent with the facts from the night prior to the murder, leading up to and regarding the murder, and occurring for over a week after the murder. Moreover, the record reveals that the State proved each element of the crime beyond a reasonable doubt.
Russ challenges the trial court’s finding that the evidence satisfied the first “cold” element of the test for CCP — that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage. Russ presents two arguments in support of this claim: (1) Russ alleges that the State failed to prove this element beyond a reasonable doubt because the evidence suggests that the murder was the result of an emotional frenzy, panic, or fit of rage, and (2) Russ alleges that, because the murder occurred within a 25-30 minute time span, he did not have adequate time for reflection. We disagree.
The first element, “cold,” is supported by competent substantial evidence. Russ admitted that the murder was premeditated and described how he selected Leinen that morning, waited in her house for her return, and then murdered her. We have found CCP where the defendant only had a few minutes to murder the victim. See Durocher v. State, 596 So.2d 997, 1001 (Fla.1992) (affirming the trial court’s finding of CCP where only a few minutes passed between the defendant’s decision to merely rob the store and his decision to shoot the clerk). Here, the record evidence reveals that Russ waited inside of Leinen’s home for at least eight or nine hours, during which he had time to calmly reflect prior to Leinen’s murder. Although the exact moment that Russ decided to murder Leinen is not entirely clear, the record does establish that Leinen’s hands and legs were so tightly bound that her hands were swollen and bruised, and the force used to bind her caused her clavicle (collar bone) to become dislocated from her scapula (shoulder blade). Leinen was placed face-down on the bathroom floor and could not offer any resistance or provocation, as evidenced by the absence of any struggle. At this point, Russ had the opportunity to abandon the crime or steal the car and other items he intended to take and leave Leinen unharmed. Nevertheless, Russ murdered Leinen after she was bound. Thus, there is competent substantial record evidence to support the “cold” element of CCP.
Next, Russ challenges the trial court’s finding that the evidence supported the second “calculated” element of the test for CCP — that the defendant had a careful plan or prearranged design to commit murder before the fatal incident. Russ contends that the absence of any signs of struggle makes it reasonable to conclude that the murder was not calculated, because the lack of struggle indicates that Leinen was immediately tied up and mur *194 dered thus eliminating time for reflection. We disagree.
We have held that where a defendant arms himself in advance, kills execution-style, and has time to coldly and calmly decide to kill, the element of “calculated” is supported. See Lynch v. State, 841 So.2d 362, 372-73 (Fla.2003) (citing Hertz v. State, 803 So.2d 629, 650 (Fla.2001)). Here, Russ himself admitted that he entered Leinen’s house after she left for work and waited until she arrived home. Russ had hours to do some of his laundry and go through Leinen’s personal belongings. As evidenced by the absence of a struggle, Russ procured two different types of rope prior to Leinen’s return home. Again, once Leinen was bound and immobilized, Russ employed not one, not two, but three different methods of killing — ligature strangulation, stabbing, and blunt force trauma. Although the sequence of the attacks is not clear, it is clear that Leinen was alive during these attacks. Russ undoubtedly had time to reflect upon these events. See Lynch, 841 So.2d at 372-73 (finding that the murder was calculated where the defendant had time to reflect between firing the first shot and firing the final, fatal shot) (citing Ford v. State, 802 So.2d 1121, 1133 (Fla.2001) (finding CCP where defendant used three different weapons and had to stop and reload prior to shooting each victim execution-style)). Clearly, there is competent substantial evidence to support the trial court’s finding of the “calculated” element.
Additionally, Russ challenges the trial court’s finding that the third prong — that the defendant exhibited heightened premeditation — was satisfied. Russ contends that the trial court’s reliance on his admission in his letter that he “chose [his] victim at that exact moment” to conclude that the heightened premeditation requirement was satisfied is erroneous. Russ claims that his statement merely meant that he intended Leinen as the victim of his burglary and theft or robbery, not as the victim of a murder. This argument is without merit.
The third element, “heightened premeditation,” is supported by competent and substantial evidence. Notably, in his letter to Judge Alva, Russ admitted that the murder was premeditated. Russ was aware that he was charged with first-degree premeditated murder and entered a knowing, intelligent, and voluntary plea to that charge. Further, we have “previously found the heightened premeditation required to sustain this aggravator where a defendant has the opportunity to leave the crime scene and not commit the murder but, instead, commits the murder.” Lynch, 841 So.2d at 373 (quoting Alston v. State, 723 So.2d 148, 162 (Fla.1998)); see also McCoy v. State, 853 So.2d 396, 407-08 (Fla.2003); Looney v. State, 803 So.2d 656, 678 (Fla.2001) (applying CCP where “the defendants had ample opportunity to reflect upon their actions, following which they mutually decided to shoot the victims execution-style”); Alston v. State, 723 So.2d 148, 162 (Fla.1998) (sustaining the CCP aggravator where the “appellant had ample opportunity to release [the victim] after the robbery,” but chose to kill him); Eutzy v. State, 458 So.2d 755, 757 (Fla.1984) (sustaining CCP where there was no sign of struggle, yet the victim was shot execution-style).
Moreover, we have upheld a finding of CCP where a defendant lay in wait for the victim’s arrival. See Dennis v. State, 817 So.2d 741, 765 (Fla.2002) (upholding CCP where facts showed defendant arrived at apartment before victim and waited for her arrival). Russ had the opportunity to leave the crime scene and not kill Leinen. As in Dennis, Russ arrived at Leinen’s *195 house and waited for eight or nine hours for her to arrive. During this time, regardless of what his intentions may have been prior to Leinen’s arrival, Russ had ample opportunity to leave the scene. Further, after Leinen was bound Russ could have left the scene. Despite this time to reflect, Russ chose to murder Leinen.
Russ also contends that he was intoxicated on crack-cocaine at the time of the murder and thus was unable to establish the requisite intent to satisfy the heightened premeditation standard. The trial court rejected this argument, finding that “there was no evidence that [Russ] was under the influence of drugs at the time of the murder.” Rather, the trial court considered Russ’s long-term addiction as a statutory mitigator and assigned it some weight. Russ claims that this is clear from the language of his letter which states, “The last 10 days leading up to the murder I was 24-7 non-stop getting high, smoking crack.” In his letter Russ explains that his motivation for running from the police and committing the subsequent crimes was because he “was willing to do anything to continue getting high.” However, in his other letter to Judge Alva, Russ stated, “Do I believe I would have murdered anyone had I not [sic] been sober? I’ve never harmed anyone physically. I have a very serious and lengthy record (criminal history). I do not have any aggervated [sic] crimes past, I would never have hurt or murdered the victim had I been sober.” In his letter, he also noted that he was on a “drug and crime spree.”
Russ’s reliance on White v. State, 616 So.2d 21, 25 (Fla.1998) (concluding that CCP was not established beyond a reasonable doubt because the trial court found that White was “high on cocaine” at the time of the murder), is misguided. A critical distinction between the instant case and White is that in White, the trial court made an express finding that White was “high on cocaine.” Here, there is no dispute that Russ used cocaine leading up to the murder, but it is not entirely clear that he was in fact under the influence of the drug at the time of the murder. We have previously rejected a similar argument. See Turner v. State, 37 So.3d 212, 224 (Fla.2010) (concluding that the CCP was proper where, despite the defendant’s assertion that he was high at the time of the murder, the trial court found that defendant was high leading up to the murder, but not at the time of the murder), cert. denied, — U.S. -, 131 S.Ct. 426, 178 L.Ed.2d 332 (2010).
As we explained in Turner, “[e]ven if the trial court had found that [the defendant] was addicted to crack cocaine, such a finding would not necessarily preclude the CCP aggravator from being found.” Id. at 224. “[A] chronic drug abuser can still act in accordance with a deliberate plan where the evidence indicates that the person ‘was fully cognizant of his actions on the night of the murder.’ ” Id. (quoting Guardado v. State, 965 So.2d 108, 117 (Fla.2007)).
Here, Russ was fully cognizant of his actions the night before the murder and on the morning of the murder. The night before the murder, Russ ran from the police, abandoned his vehicle, and slept on a roof to avoid being arrested by the police. Russ watched as his car was towed and decided that he needed to obtain another vehicle. The next morning, he saw Leinen leave her home and selected her as his victim. Once inside of her home, Russ spent the day doing laundry, showering, eating, and collecting valuable items that he intended to steal. Russ was able to immobilize Leinen and proceeded to beat, strangle and stab her. At some point, *196 Russ was able to locate Leinen’s keys and load the items he intended to steal into her car. Then, Russ got into Leinen’s car and drove away. Later, he pawned Leinen’s belongings at a pawn shop. Russ was able to drive to Texas, where he attempted to commit another crime in the exact same way that he carried out Leinen’s murder. All of these actions are consistent with someone who was fully cognizant of his actions at the time of the murder. Therefore, the trial court’s finding of heightened premeditation is based on competent substantial evidence.
Finally, Russ did not present evidence or argument to satisfy the fourth element before the trial court and does not now challenge the fourth element. However, it is clear that the fourth element— that the murder was committed with no pretense of legal or moral justification— was satisfied. The record is devoid of any evidence of a threatening act by Leinen prior to the murder that would constitute a pretense of legal or moral justification. See Williamson v. State, 511 So.2d 289 (Fla.1987) (rejecting Williamson’s claim that even if the murder was cold, calculated, and premeditated, he had a pretense of moral or legal justification for having committed the murder because he was afraid a fellow inmate would harm his partner or himself for an unpaid debt). Accordingly, we affirm the trial court’s finding of CCP and deny relief on this claim.
HAC
Russ challenges the trial court’s finding of the HAC aggravator. Russ contends that because the evidence was inconclusive regarding whether Leinen was conscious, the finding of the HAC aggravator was improper. Russ claims that the absence of signs of a struggle or defensive wounds precludes a finding that Leinen endured prolonged suffering or foreknowledge of her impending death and submits that this aggravator was based on pure speculation. We disagree.
In order for the HAC aggravator to apply, the murder must be conscienceless or pitiless and unnecessarily torturous to the victim. See Rogers v. State, 783 So.2d 980, 994 (Fla.2001). The HAC aggravator applies in physically and mentally torturous murders which can be illustrated by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another. See Barnhill v. State, 834 So.2d 836, 850 (Fla.2002) (citing Williams v. State, 574 So.2d 136 (Fla.1991)). HAC concentrates “on the means and manner in which the death is inflicted and the immediate circumstances surrounding the death, rather than the intent and motivation of a defendant, where a victim experiences the torturous anxiety and fear of impending death.” Barnhill, 834 So.2d at 850 (citing Brown v. State, 721 So.2d 274, 277 (Fla.1998)); Evans v. State, 800 So.2d 182, 194 (Fla.2001). Thus, there does not need to be a showing that the defendant intended or desired to inflict torture; the torturous manner of the victim’s death is evidence of a defendant’s indifference. See Barnhill, 834 So.2d at 850 (citing Brown, 721 So.2d at 277).
The victim’s mental state may be evaluated in accordance with commonsense inferences from the circumstances. See Hernandez v. State, 4 So.3d 642, 669 (Fla.2009) (citing Swafford v. State, 533 So.2d 270, 277 (Fla.1988)). To support HAC, the evidence must show that the victim was conscious and aware of impending death. Hernandez, 4 So.3d at 669 (citing Douglas v. State, 878 So.2d 1246, 1261 (Fla.2004)). However, this Court has explained that the actual length of the victim’s consciousness is not the only factor relevant to HAC — “[F]ear, emotional *197 strain, and terror of the victim during the events leading up to the murder may make an otherwise quick death especially heinous, atrocious, or cruel.” Hernandez, 4 So.3d at 669 (quoting James v. State, 695 So.2d 1229, 1235 (Fla.1997)).
In the present case, Leinen was beaten, stabbed, and strangled. We have explained, “Because strangulation of a conscious victim involves foreknowledge and the extreme anxiety of impending death, death by strangulation constitutes prima facie evidence of HAC.” Barnhill, 834 So.2d at 850 (citing Mansfield v. State, 758 So.2d 636, 645 (Fla.2000)). The HAC aggravator is often found where the victim had been stabbed multiple times prior to death or was beaten to death. See Williams v. State, 967 So.2d 735, 762-63 (Fla.2007) (concluding HAC proper where the defendant repeatedly stabbed the victim); Guardado v. State, 965 So.2d 108, 116 (Fla.2007) (concluding that HAC was proper where the defendant repeatedly stabbed the victim); Ibar v. State, 938 So.2d 451, 474-75 (Fla.2006) (concluding that HAC was proper where the defendant beat the victim continually until finally shooting him).
Here, the medical examiner testified that abrasions on Leinen’s neck indicated she was moving from right to left, pulling away from the ligature around her neck and that she would have been in a “significant amount of discomfort, both physically and ... mentally.” Moreover, Leinen sustained multiple blunt force trauma injuries and stabbing injuries, each of which would have been painful. It does not logically follow that Russ would have employed so many different methods to kill Leinen had she been rendered unconscious prior to the attack. Further, based on the evidence, common sense indicates that the absence of defensive wounds on Leinen’s body resulted from either her cooperation or being bound prior to being murdered — it does not, as Russ contends, preclude a finding of HAC. Thus, we conclude that the trial court’s finding of the HAC aggravator is supported by competent substantial evidence.
Proportionality
Russ challenges the proportionality of his death sentence. As explained below, Russ is not entitled to relief on this claim.
First, Russ argues that the trial court abused its discretion in the weighing process itself. Russ initially phrases this argument to imply that the trial court failed to consider valid mitigation in violation of Eddings v. Oklahoma, 455 U.S. 104, 114—15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (explaining that the sentencer may not refuse to consider, as a matter of law, any relevant mitigating evidence), and Rogers v. State, 511 So.2d 526 (Fla.1987) (same). The argument contained in Russ’s initial brief is actually an argument that the trial court’s sentencing process violated the standards articulated in Eddings and Rogers because the “trial court glossed over the mitigating factors and improperly abused its discretion in giving them little weight, with no explanations why.” Russ is really challenging the trial court’s assignment of weight to the mitigation below. This argument is not compelling.
“We review the weight the trial court ascribes to mitigating factors under the abuse of discretion standard.” Smith v. State, 998 So.2d 516, 527 (Fla.2008). In the present case, the trial court considered each mitigating circumstance, provided a recitation of the factual basis for the mitigating circumstance, and assigned weight to each mitigating circumstance. After conducting its analysis and weighing the sentencing factors, the trial court concluded that “the aggravating factors outweigh *198 the mitigating circumstances for the murder of Madeleine Leinen.”
Russ claims that the trial court should have explained its findings and cites to Merck v. State, 975 So.2d 1054, 1065 (Fla.2007), and Offord v. State, 959 So.2d 187 (Fla.2007), in support of this argument. Pursuant to section 921.141(3), Florida Statutes (2007), the trial court is required to make independent findings on aggravation, mitigation, and weight, “supported by specific written findings of fact.” § 921.141(3), Fla. Stat. (2007). Here, there was no abuse of discretion because the trial court thoroughly considered the aggravating and mitigating circumstances at issue and supported each with specific written findings of fact. See Dennis v. State, 817 So.2d 741, 763 (Fla.2002). Thus, we will not reweigh these mitigators.
Russ also argues that the trial court failed to properly document the requisite findings of fact for mitigating circumstances and that the existence of mitigation regarding his long-term substance abuse renders the death sentence disproportionate. Russ cites to numerous cases in support of this argument. See Mahn v. State, 714 So.2d 391, 401 (Fla.1998) (concluding that the trial court erred in failing to give Mahn’s extensive and uncontrovert-ed history of drug and alcohol abuse any weight as a nonstatutory mitigating circumstance); Jackson v. State, 704 So.2d 500, 507 (Fla.1997) (concluding that the trial court erred in summarily disposing of statutory and nonstatutory mitigation); Ferrell v. State, 653 So.2d 367, 371 (Fla.1995) (concluding that the trial court’s written findings were insufficient); Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990) (physical evidence at the scene of the crime established that the defendant had been drinking heavily on the day of the murder); Ross v. State, 474 So.2d 1170, 1174 (Fla.1985) (concluding that the trial court erred in rejecting the mitigating circumstances of extreme mental or emotional distress and impaired mental capacity in view of the evidence that the appellant was an alcoholic and was intoxicated at the time of the homicide). In each of the cases cited by Russ, the trial court completely failed to consider uncontroverted record evidence or summarily rejected potential mitigation. In the instant case, the trial court made specific findings of mitigation related to Russ’s long-term substance abuse problems. Further, the weight the trial court assigned to the mitigation does not amount to an abuse of discretion.
Next, this Court must conduct a qualitative analysis and comparison of other capital cases to determine whether the death sentence is proportionate. Russ contends that regardless of the aggravation present in his case, imposition of the death sentence is disproportionate because his case is among the most mitigated of cases. “In reviewing a death sentence for proportionality, we ensure that the death penalty is ‘reserved only for those cases where the most aggravating and least mitigating circumstances exist.’ ” McGirth v. State, 48 So.3d 777, 796 (Fla.2010) (quoting Terry v. State, 668 So.2d 954, 965 (Fla.1996)), cert. denied, — U.S. -, 131 S.Ct. 2100, 179 L.Ed.2d 898 (2010). This Court’s “review on proportionality is not a comparison between the number of aggra-vators and mitigators.” McGirth, 48 So.3d at 796; see Barnes v. State, 29 So.3d 1010, 1028 (Fla.), cert. denied, — U.S. -, 131 S.Ct. 234, 178 L.Ed.2d 155 (2010). Proportionality review requires this Court to engage in a qualitative review of the “totality of the circumstances and compare the present case with other capital cases in which this Court has found that death was a proportionate punishment.” Wright v. State, 19 So.3d 277, 303 (Fla.2009) (citing *199 Urbin v. State, 714 So.2d 411, 416 (Fla.1998)).
A qualitative review of the totality of the circumstances in this case and a comparison between this case and other capital cases reveals that the death penalty here is proportionate. We have concluded that the death sentence was proportionate in cases where there was less aggravation and similar mitigation. See Boyd v. State, 910 So.2d 167 (Fla.2005) (concluding that the death sentence was proportionate where the trial court found two aggravators, one statutory mitigator, and five non-statutory mitigating factors); Evans v. State, 808 So.2d 92 (Fla.2001) (concluding that Evans’ death sentence was proportionate where the trial court found two aggravating factors, one statutory miti-gator, and the existence of eleven nonstat-utory mitigators).
Moreover, we have found the death sentence proportionate in the face of fewer aggravators and significantly more miti-gators. See Johnston v. State, 863 So.2d 271, 286 (Fla.2003) (concluding the death sentence was proportionate where the trial court found the existence of two aggravating circumstances and one statutory mitigating factor and trial court found the existence of 26 nonstatutory mitigating factors); see also Blackwood v. State, 777 So.2d 399 (Fla.2000) (strangulation murder; HAC aggravator; one statutory miti-gator and eight nonstatutory mitigators); Hauser v. State, 701 So.2d 329 (Fla.1997) (victim strangled; three aggravators of HAC, CCP, and pecuniary gain, balanced against one statutory mitigator and four nonstatutory mitigators).
We have also found the death sentence proportionate where there was similar aggravation and more mitigation. See Willacy v. State, 696 So.2d 693, 695 (Fla.1997) (defendant lay in wait for victim, beat and strangled her; aggravating circumstances of committed in the course of a robbery, arson, and burglary; committed to avoid lawful arrest, committed for pecuniary gain, HAC, and CCP; no statutory mitigating factors and 31 nonstatutory mitigating factors). Finally, we have found the death sentence proportionate in the face of similar aggravation and similar mitigation. See Zack v. State, 753 So.2d 9 (Fla.2000) (concluding the death penalty was proportionate where the trial court found the existence of four valid aggravating factors, three statutory mitigators, and three non-statutory mitigators).
Russ’s assertion that his case is among the most mitigated is without merit. Because the trial court did not abuse its discretion, we will not reweigh the trial court’s assignment of weight below. Accordingly, we find that Russ’s death sentence is proportionate.
Issue III: Sufficiency of the Evidence
Russ does not challenge the trial court’s acceptance of his guilty plea in this appeal. Nevertheless, we have a mandatory obligation to review the basis of Russ’s conviction for first-degree murder. See Barnes v. State, 29 So.3d 1010, 1020 (Fla.2010) (citing Bevel v. State, 983 So.2d 505, 516 (Fla.2008)). In cases involving imposition of a death sentence after the defendant has pleaded guilty to a charge of first-degree murder, “this Court’s [mandatory] review shifts to the knowing, intelligent, and voluntary nature of that plea.” Barnes, 29 So.3d at 1020 (alteration in original) (quoting Tanzi v. State, 964 So.2d 106, 121 (Fla.2007)). We must “scrutinize the plea to ensure that the defendant was made aware of the consequences of his plea, was apprised of the constitutional rights he was waiving, and pled guilty voluntarily.” Winkles v. State, 894 So.2d 842, 847 (Fla.2005) (quoting Ocha v. State, 826 So.2d 956, 965 (Fla.2002)).
*200 A review of the record reveals that Russ’s plea was made knowingly, intelligently, and voluntarily. Russ was represented by trial counsel on February 6, 2008. That day, trial counsel informed the trial court that Russ “would be withdrawing his pleas of not guilty, tendering a plea of guilty to Count One, to first degree premeditated murder.” Prior to acceptance of Russ’s plea, the trial court asked the State to provide a factual basis for the plea. See Fla. R.Crim. P. 3.172(a). The State provided a factual basis for the plea indicating, among other things, that Russ was responsible for the May 7, 2007, murder of Leinen, whose cause of death was a combination of blunt force trauma, stabbing, and ligature strangulation on May 7, 2007. Trial counsel stipulated that the State could establish the defendant’s guilt by competent evidence and Russ agreed with the factual basis offered by the State. See Fla. R.Crim. P. 3.172(e). Further, the trial court inquired into whether exculpatory DNA evidence existed. The State informed the trial court that there appeared to be DNA evidence that would inculpate Russ. Defense counsel and Russ agreed. See Fla. R.Crim. P. 3.172(d). Russ testified that he understood that by entering the plea he was facing life in prison or a death sentence. See Fla. R.Crim. P. 3.172(c)(l)-(6).
Based on the plea colloquy, the trial court found that Russ was alert and competent. The trial court also found “the plea to be freely and voluntarily made with knowledge of the consequences after advice of competent counsel with whom [Russ was] satisfied. [The trial court also found a] sufficient factual basis for the plea based on the proffer of the State [and the] stipulation of defense counsel and the defendant.” The trial court then accepted Russ’s plea of guilty in open court. See Fla. R.Crim. P. 3.172(b).
We conclude that Russ’s guilty plea in this case was knowing, intelligent, and voluntary. Russ was made aware of the consequences of his plea and was apprised of the constitutional rights he was waiving as a result. Therefore, the plea and conviction were properly entered. Further, the factual basis for the plea, which was confirmed by defense counsel and Russ and was proven by the forensic evidence and Russ’s confessions, provides competent, substantial evidence to support the conviction for first-degree murder and Russ’s other convictions in this case. Accordingly, we affirm Russ’s convictions and sentences.
It is so ordered.
CANADY, C.J., and LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs with an opinion.

. Russ was 45 years old at the time of the murder.

. Koon v. Dugger, 619 So.2d 246 (Fla.1993).

. Among other things, special counsel noted the existence of Russ's: (1) substance abuse addiction, (2) physical and verbal abuse that he experienced as a child, (3) relationship with his brother, (4) multiple attempts to cure his addiction, (5) acceptance of responsibility for the crimes, (6) courtroom behavior, (7) obtaining a GED, (8) employment as a roofer, (9) depression, (10) training as a counselor, (11) relationship with his fiancée’s son and with his 80-year-old aunt, (12) lack of violent criminal history, and (13) desire to spare people from the penalty phase proceedings.

. Spencer v. State, 615 So.2d 688 (Fla.1993).

. Muhammad v. State, 782 So.2d 343 (Fla.2001).