# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-1194
Lower Tribunal No. 2020-CA-002266

_____

UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY,

Appellant,

v.

NELSON RODRIGUEZ and YOSEIDA CUEVAS,

Appellees.

_____

Appeal from the Circuit Court for Polk County.
Jennifer Swenson, Judge.

February 6, 2026

SPRYSENSKI, C., Associate Judge.

Universal Property & Casualty Insurance Company ("Universal") appeals the entry of a final judgment for breach of contract in favor of Nelson Rodriguez and Yoseida Cuevas (collectively "the Homeowners" or "Homeowners") after a jury entered verdict in favor of the Homeowners. Based on the plain language of section 627.7011(3)(a), Florida Statutes, we affirm.

*BACKGROUND*

Universal provided the Homeowners a replacement cost value homeowner's insurance policy on the Homeowners' residence in 2020. Per the insurance policy, for **covered** property losses, Universal would pay: first, "at least the actual cash value of the insured loss, less any applicable deductible," and then "any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred."

Following the issuance of the policy, the Homeowners experienced damage to their residence as a result of a storm. Universal denied the Homeowners' claim for coverage. The Homeowners subsequently filed suit for breach of contract that ultimately proceeded to a jury trial.

At trial, the Homeowners testified that they did not perform repairs on the property after the storm. Over Universal's objection, the Homeowners presented evidence in the form of a contractor's estimate of the replacement cost value of the repairs necessary to fix the damage to their residence. Universal argued that since the Homeowners had not performed any repairs to the property, pursuant to the terms of the insurance policy, the correct measure of damages was the actual cash value of the repairs and that the Homeowners should be limited to presenting only evidence of damages as to the actual cash value of the loss to the Homeowners. The trial court overruled both a motion in limine filed by Universal and an objection made by

Universal at trial as to the admissibility of evidence of replacement cost value of the repairs.

The jury ultimately returned a verdict for the Homeowners, and the trial court entered final judgment in favor of the Homeowners. After the trial court denied a motion for directed verdict filed by Universal (also arguing that based upon the insurance policy, evidence of replacement cost value damages should not have been presented to the jury), this appeal followed.

## *ANALYSIS*

On appeal, Universal argues that the trial court incorrectly denied its motion in limine and motion for directed verdict, both of which argued that the Homeowners were limited to presenting evidence of the actual cash value of the loss to the Homeowners' residence since the Homeowners failed to make any repairs to the residence as of the date of trial.

"Generally, '[t]he standard of review of a trial court's ruling on a motion in limine is abuse of discretion.'" *Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. 3d DCA 2020) (citing *Patrick v. State*, 104 So. 3d 1046, 1056 (Fla. 2012)). "However, where the trial court's order presents questions of insurance policy interpretation and statutory construction, our review is de novo." *Id*. Likewise, "[t]he standard of review for a trial court's ruling on a motion for directed verdict is de novo, and the court must look at all evidence in the light most favorable to the

3

nonmoving party." *Dumigan v. Holmes Reg'l Med. Ctr., Inc.*, 332 So. 3d 579, 583 (Fla. 5th DCA 2022).

An initial review of Section 627.7011(3)(a), Florida Statutes is instructive to our analysis. The statute states as follows:

> (3)    In the event of a loss for which a dwelling or personal property is insured on the basis of replacement costs:
>
> > (a)    For a dwelling, the insurer must initially pay at least the actual cash value of the insured loss, less any applicable deductible. The insurer shall pay any remaining amounts necessary to perform such repairs as work is performed and expenses are incurred . . .

§ 627.7011(3)(a), Fla. Stat.

As previously noted, Universal provided the Homeowners a replacement cost value homeowner's insurance policy upon the Homeowners' residence that contained the following pertinent language reflective of Florida Statutes, to wit:

> D. Loss Settlement
>
> . . .
>
> Covered property losses are settled as follows:
>
> . . .
>
> 2. Buildings and screened enclosures covered under Coverage A or B replacement cost without deduction for depreciation, subject to the following:
>
> . . .
>
> d. We will initially pay at least the actual cash value of the insured loss, less any applicable deductible. We will then pay any remaining amounts

4

necessary to perform such repairs as work is performed and expenses are incurred . . .

The Second, Third and Fourth Districts have recently opined on the question presented by this appeal. Specifically, when an insurance company denies an insured's claim for coverage, may contractual language designed to allow the insurer to initially pay only the actual cash value for claims that are covered by the insurance policy also bar an insured that sues an insurer for wrongfully denying coverage from presenting evidence of damages at trial using replacement cost value estimates? This Court joins the Second and Third Districts in answering this question in the negative.

The Third District Court of Appeal initially tackled this question in *Citizens Property Insurance Corp. v. Tio*, 304 So. 3d 1278, 1279 (Fla. 3d DCA 2020). *Tio* involved the same type of replacement cost value insurance policy that is involved in the instant appeal and also involved a denial of the insured's claim by the insurer. 304 So. 3d at 1279-80. The Third District held in *Tio* that section 627.7011(3)(a), Florida Statutes, governs an insurer's post-loss obligations in adjusting and settling claims **covered** under a replacement cost policy and does not operate as a limitation on a policyholder's remedies when an insurer **breaches** an insurance contract by wrongfully denying coverage. *Id.*

Four years after the Third District's opinion in *Tio*, the Fourth District addressed this same question in *Universal Property & Casualty Insurance Co. v. Qureshi*, 396 So. 3d 564, 566 (Fla. 4th DCA 2024). In *Qureshi*, similarly to the

5

instant appeal, the trial court allowed an insured to present evidence of damages using the replacement cost value of the repairs. 396 So. 3d at 565-66. In reversing the trial court, the Fourth District found that "the insureds' policy [was] clear and unambiguous" and that based on the insurance policy's plain language, "[t]he insureds are not entitled to their repair costs unless and until 'work is performed and expenses are incurred.'" *Id.* at 567. The Fourth District reasoned that by allowing the insureds to present evidence of damages in the form of the replacement cost value of repairs, the trial court had essentially rewritten the insurance policy. *Id.* at 567-68.

There is an important factual difference between *Tio* and *Qureshi*. In *Qureshi*, at the time of trial, the insured's dwelling had already been sold to a third party and was no longer owned by the insured. *Qureshi*, 396 So. 3d at 565. Part of Universal's argument in *Qureshi* was that the insured could no longer make the repairs given their sale of the property, making any consideration of replacement cost value impossible. *Id.* In *Tio*, the insured still maintained ownership of the dwelling covered by the insurance policy. *See Tio*, 304 So. 3d at 1279. The Third District did not discuss in any meaningful detail whether this factual difference played a role in its holding. *See id.* at 1279-80.

Which leaves the Second District's opinion under *Brito v. Citizens Property Insurance Corp.*, 415 So. 3d 252 (Fla. 2d DCA 2025). As in *Tio*, *Qureshi*, and the instant appeal, *Brito* involved a similar factual posture: the insurance policy involved

6

provided coverage on a replacement-cost basis; and the insurer denied[1] the insureds'

claim. *Brito*, 415 So. 3d at 252-53

The Second District in *Brito* explored the difference between the trial court's

role in a case involving a dispute wherein the insurer provided coverage for an

insured's claim versus when the claim is denied by the insurer. *Id.* at 254-55. The

Second District agreed with the Third District's logic in *Tio*, and "accordingly

rejected the Insurer's position that 'when an insurer wrongfully denies coverage of

a claim—causing its insured to file suit against the insurer for breaching the

insurance contract—section 627.7011(3) limits the breach of contract damages a jury

may award, as if the insurer had not breached the insurance contract.'" *Id.* at 255

(quoting *Tio*, 304 So. 3d at 1280). As such, the Second District agreed with the Third

District's holding in *Tio*, along with Judge Warner's dissent in *Qureshi*, and held that

where a claim is wrongfully denied by the insurer, the insured is not limited to

presenting evidence of damages of the actual cash value of the loss.

Turning back to this instant cause, as this appeal involves both the

interpretation of an insurance policy along with the statute from which the language

---

[1] During oral argument, Universal attempted to distinguish the denial of the Homeowners' claim here from the denials in *Tio*, *Qureshi* and *Brito*. Specifically, Universal claimed that the denial involved in this appeal was based upon a lack of cooperation from the Homeowners by their failure to provide documentation requested by Universal. This distinguishing fact does not change the jury's finding that Universal improperly denied the Homeowners' claim, and this finding is not challenged by Universal on appeal.

of the insurance policy is derived, an initial analysis of the plain language of both the contract and statute is required. It is clear on the face of section 627.7011(3)(a) that an insurance company's ability to limit initial payments to an insured to the actual cash value of the damage applies to covered claims only. Pursuant to section 627.7011(3)(a), "[f]or a dwelling, the insurer must initially pay the actual cash value of the **insured loss** . . ." (Emphasis added). Similarly, the language of the insurance policy between Universal and the Homeowners under this instant appeal allows Universal to "initially pay at least the actual cash value of the **insured** loss" when settling a "**covered** property loss." (Emphasis added).

Here, there is no question that Universal denied the Homeowners' claim. As such, the Homeowners were not limited to the presentation of only evidence of damages based on the actual cash value of repairs actually made, as found by the Third District in *Tio*, and the Second District in *Brito*.

Universal argues that this Court should reject the reasoning in *Tio* because its holding is irreconcilable with *Citizens Property Insurance Co. v. Manor House, LLC*, 313 So. 3d 579 (Fla. 2021). Universal asserts that the holding *Manor House* requires that the express contractual language of the insurance contract still controls the measure of damage, regardless of whether the insurer extended coverage for the claim or denied the claim.

8

This argument ignores that *Manor House* answered a specific question, a question not presented by this appeal. In *Manor House*, an insured sued an insurer for breach of contract to recover **extra-contractual** consequential damages in the form of lost rental income. *Manor House*, 313 So. 3d at 580. The question certified to the Florida Supreme Court for resolution was whether an insured could recover extra-contractual consequential damages in a first-party breach of insurance contract action not involving suit under section 624.155, Florida Statutes. *Id*. at 581. The Florida Supreme Court answered that question in the negative, reasoning that extra-contractual consequential damages were not available because the contractual amount due to the insured was the amount owed pursuant to the express terms and conditions of the policy. *Id*. at 582-84. In this case, the Homeowners seek damages for which the contract expressly provides. Indeed, this is a "replacement cost value" insurance policy.

In reaching our conclusion that an insured is not bound to the actual cash value of the loss when presenting evidence of damages, we borrow the sound logic of Judge Atkinson's concurrence in *Brito*. Specifically, that:

> The damages inquiry in the trial of an action for an insurer's breach of contract based on a denial of coverage is, essentially, what the insurer *would have* been required to pay had it not denied coverage.
>
> . . .
>
> The legal proceedings necessitated by the insurer's alleged contract-breaching denial of coverage are designed to adjudicate not only

9

whether the contract was breached but also the precipitate damages incurred by the insureds by way of an assessment of what position they should have been in had the breach not occurred. That includes not only the actual cash value payment but also the additional payments to account for the replacement cost that the insurer would have been obligated to pay upon the making of repairs had it not allegedly breached the contract by denying coverage. In an action precipitated by a denial of coverage that allegedly breached the insurance contract, the fact that the insurance contract makes such replacement cost payments contingent on the costs having already been incurred does not foreclose adjudication of what those replacement costs *would be* had the insurer complied with the policy.

*Brito*, 415 So. 3d at 257-258 (Atkinson, J., concurring specially)

The trial court neither erred when it denied Universal's motion in limine nor when it denied Universal's post-trial motions for a directed verdict.

We agree with Judge Atkinson that "[i]t defies logic to limit such an inquiry to actual cash value when the contract governing the action entitles the insured to 'replacement cost without deduction for depreciation,'" the verbatim contractual language presented to us in the instant appeal. *Id*. at 257. As such, we join the Second District and certify conflict with the *Qureshi* majority.

AFFIRMED. CONFLICT CERTIFIED.

STARGEL and MIZE, JJ., concur.

Kara Rockenbach Link and David A. Noel, of Link & Rockenbach, P.A., West Palm Beach, for Appellant.

Michael A. Cassel, of Cassel & Cassel, P.A., Hollywood, for Appellees.

10

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED